FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 28 2011 ★

BROOKLYN OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARVIN LEFF, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLE REIT TEN, INC., APPLE REIT NINE, INC., DAVID LERNER ASSOCIATES, INC., DAVID LERNER, GLADE M. KNIGHT, BRYAN PEERY, KENT W. COLTON, GLENN W. BUNTING, R. GARNETT HALL, JR., RONALD A. ROSENFELD, ANTHONY FRANCIS "CHIP" KEATING, III, LISA B. KERN, BRUCE H. MATSON, MICHAEL S. WATERS, AND ROBERT M. WILY,<br><br>Defendants. | Civil Action No.<br><br>**CV 11 - 3094**<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED<br><br>WEXLER, J<br><br>LINDSAY, M.J. |

## I. INTRODUCTION

Plaintiff Marvin Leff ("Plaintiff"), individually and on behalf of all others similarly situated, by his undersigned attorneys, alleges the following for his Class Action Complaint against Defendants, based upon personal knowledge as to himself and his own acts, and based upon information and belief as to all other matters from, inter alia, the investigation of Counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings of Apple REIT Six, Inc., Apple REIT Seven, Inc., Apple REIT Eight, Inc., Apple REIT Nine, Inc. and Apple REIT Ten, Inc., the Complaint in a Disciplinary Hearing initiated against David Lerner Associates, Inc.("DLA") by the Financial Industry Regulatory Authority ("FINRA") on May 27, 2011, other regulatory filings and reports, press releases and other public statements.

1.  This class action lawsuit asserts claims under sections 11, 12 and 15 of the Securities Act of 1933 ("Securities Act") on behalf of all persons or entities who purchased shares of REIT Nine and REIT Ten pursuant to offering documents issued by the REITs that

contained materially false and misleading statements and omitted to state facts necessary to make the statements made there not materially misleading.

## II.  JURISDICTION AND VENUE

2.  This Court has jurisdiction over the subject matter of this action pursuant to section 22 of the Securities Act (15 U.S.C. § 77v), and 28 U.S.C. § 1331.

3.  Venue is proper in this Court pursuant to section 22 of the Securities Act, 15 U.S.C. § 77v, and 28 U.S.C. § 1391, because many of the acts and transactions giving rise to the violations of law complained of herein occurred in this District and certain of the Defendants have their principal of business within this District.  Specifically, DLA, which is the sole distributor of the shares that are at issue in this lawsuit, is a New York corporation headquartered in this District.  Thus, the solicitations at issue originated in this District and many of the specific statements at issue in this lawsuit emanated from this District.

4.  In connection with the acts, conduct and other wrongs complained of herein, Defendants used the means and instrumentalities of interstate commerce.

## III.  THE PARTIES
### Plaintiff

5.  Plaintiff Marvin Leff, a resident of Queens County, New York, purchased shares of REIT Nine and REIT Ten as set forth on the attached certification.

### Defendants

6.  Defendant Apple REIT Ten, Inc. ("REIT Ten") is a Virginia corporation headquartered in Richmond, Virginia.

7.  REIT Ten was formed to acquire and own hotels and other income-producing real estate.  REIT Ten operates for federal income tax purposes as a real estate investment trust.

2

8. Shares in REIT Ten are sold to the public by REIT Ten's sole distributor, DLA. Accordingly, there is no market by which share value is determined. REIT Ten is not traded on any securities exchange. Instead, purchases are highly dependent on the financial statements and other reports from the REIT and Defendants are able to sell shares to the public at a fixed price of $11 per share. Since REIT Ten's securities are unlisted and relatively illiquid, securities analysts do not typically report on REIT Ten. Therefore, the type of in depth analysis that analysts generate about listed securities is absent from the body of information available about REIT Ten stock, heightening the importance of complete and accurate disclosures to investors.

9. From its formation in August 2010 through May 19, 2011, REIT Ten raised over $307 million from the investing public, who purchased over 28 million shares at a price of $11 per share (or $10.50 per share for the first 9,523,810 shares sold).

10. Defendant Apple REIT Nine, Inc. ("REIT Nine") is a Virginia corporation headquartered in Richmond, Virginia.

11. REIT Nine was formed to acquire and own hotels and other income-producing real estate. REIT Nine operates for federal income tax purposes as a real estate investment trust.

12. Shares are sold to the public by REIT Nine's sole distributor, DLA. REIT Nine is not traded on any securities exchange. Accordingly, there is no market by which share value is determined.

13. From its formation in November through May 19, 2011, Apple REIT Nine has collected nearly $2 billion from the investing public, who has purchased nearly 200 million shares at a price of $11 per share (or $10.50 per share for the first 9,523,810 shares sold).

14.     Defendant Apple Ten Advisors is wholly owned by Defendant Glade Knight and contracts to provide day-to-day management of REIT Ten.

15.     Defendant Apple Nine Advisors is wholly owned by Defendant Glade Knight and contracts to provide day-to-day management of REIT Nine.

16.     Defendant DLA was and is the sole distributor and managing dealer for sales of shares of REIT Nine and REIT Ten to the public.   DLA is a New York corporation headquartered in Syosset, New York.  DLA is a registered broker-dealer with the Securities and Exchange Commission ("SEC").

17.     DLA collects commissions of 7.5% of all Apple REIT shares it sells, plus a 2.5% marketing expense allowance, for a total of 10% of all shares it sells.  DLA also receives a fee for account management services of $5 per new customer account and $10 per year for each active customer account.

18.     DLA, in its capacity as best efforts underwriter and sole distributor, continues to solicit numerous customers to purchase Apple REIT Ten.  DLA has sold the Apple REITs and continues to sell REIT Ten targeting unsophisticated and elderly customers to buy the illiquid Apple REIT securities.

19.     Defendant David Lerner ("Lerner") is the president, founder, and the majority owner of DLA.

**The REIT's Officers and Directors**

20.     Defendant Glade M. Knight ("Knight") is the founder, chairman, and chief executive officer of REITs Six, Seven, Eight, Nine, and Ten.  Knight is also the chief executive officer and sole shareholder of Apple Ten Advisors, Apple Nine Advisors, and Apple Suites Realty.  Knight signed all of the relevant offering documents on behalf of REITs Nine and Ten.

4

21.     Defendant Bryan Peery ("Peery") is the executive vice president and chief financial officer of REITs Six, Seven, Eight, Nine and Ten.  Peery signed all of the relevant offering documents on behalf of REITs Nine and Ten.

22.     Defendant Ken W. Colton ("Colton") has been a director of REIT Ten from August 2008 to present and signed all of the relevant offering documents on behalf of REIT Ten.

23.     Defendant Glenn W. Bunting ("Bunting") has been a director of REIT Ten from August 2008 to present and signed all of the relevant offering documents on behalf of REIT Ten.

24.     Defendant R. Garnettt Hall, Jr. ("Hall") has been a director of REIT Ten from August 2008 to present and signed all of the relevant offering documents on behalf of REIT Ten.

25.     Defendant Ronald A. Rosenfeld ("Rosenfeld") has been a director of REIT Ten from August 2008 to present and signed all of the relevant offering documents on behalf of REIT Ten.

26.     Defendant Anthony Francis "Chip" Keating, III ("Keating") has been a director of REIT Ten from August 2008 to present and signed all of the relevant offering documents on behalf of REIT Ten.

27.     Defendants Knight, Peery, Colton, Bunting, Hall, Rosenfeld, and Keating are sometimes referred to herein as the "REIT Ten Officers and Directors."

28.     Defendant Lisa B. Kern ("Kern") has been a director of REIT Nine from 2007 to present and signed all of the relevant offering documents on behalf of REIT Nine.  Kern is also a director of REIT Six and REIT Seven.

29.      Defendant Bruce H. Matson ("Matson") has been a director of REIT Nine from 2007 to present and signed all of the relevant offering documents on behalf of REIT Nine. Matson is also a director of REIT Six and REIT Seven.

30.      Defendant Michael S. Waters ("Waters") has been a director of REIT Nine from 2007 to present and signed all of the relevant offering documents on behalf of REIT Nine. Waters is also a director of REIT Six and REIT Eight.

31.      Defendant Robert M. Wily ("Wily") has been a director of REIT Nine from 2007 to present and signed all of the relevant offering documents on behalf of REIT Nine.  Wily is also a director of REIT Six and REIT Eight.

## IV.    CLASS ACTION ALLEGATIONS

32.      This is a class action pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class of all persons who purchased or otherwise acquired REIT Nine and REIT Ten securities between June 17, 2008 and present, inclusive (the "Class Period"), who suffered damages as a result of the actions complained of herein (the "Class").

33.      Excluded from the Class are the Defendants named herein, officers and directors of Defendants at all relevant times, members of each Defendant's immediate family, any entity in which any Defendant has a controlling interest, and the legal affiliates, representatives, heirs, controlling persons, successors, and predecessors in interest or assigns of any such excluded party.

34.      Because REIT Ten has sold over 28 million shares during the Class Period, and REIT Nine has sold nearly 200 million shares during the Class Period, members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members can only be determined through appropriate discovery, Class members number at least in the tens of thousands and they are geographically dispersed.

35.     Plaintiff's claims are typical of the claims of the members of the Class, because Plaintiff and all of the Class members sustained damages arising out of Defendants' wrongful conduct.

36.     Plaintiff will fairly and adequately protect the interests of all Class members and has retained counsel experienced and competent in class and securities litigation.  Plaintiff has no interest contrary to, or in conflict with, the members of the Class that Plaintiff seeks to represent.  Because Plaintiff alleges identical conduct on the part of Defendants with respect to marketing and selling of shares of REITs Nine and Ten, the sales of which were solicited by the same Defendants based on offering documents that contained identical or nearly identical false and misleading statements or omitted the same material information, he is similarly situated to all Class members, there are no conflicts, and he will fairly and adequately protect the interests of all Class members, including purchasers of both REIT Nine and REIT Ten.

37.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual members may be relatively small, the expense and burden of individual litigation make it impossible for Class members individually to redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

38.     Questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members, in that Defendants have acted on grounds generally applicable to the entire Class.  Among the questions of law and fact common to the Class are:

        a.     Whether Defendants violated sections 11, 12 and 15 of the Securities Act;

   b.     Whether REIT Nine's and REIT Ten's registration statements and prospectuses contained materially false and misleading statements and failed to disclose material facts necessary to make the statements therein;

   c.     Whether DLA solicited purchases through materially false and misleading statements and failed to disclose material facts necessary to make the statements therein not materially false and misleading; and

   d.     Whether the members of the Class have sustained damages and, if so, the proper measure of such damages.

## V.   WRONGFUL CONDUCT

39.     REIT Nine sold shares to the public from April 25, 2008 to December 2010. REIT Ten has sold shares to the public from January 20, 2011 to the present.  Both REITs were formed for the purpose of acquiring and owning hotels and other income-producing real estate. Both REITs sold shares to the public for $11 per share.  Between April 25, 2008 and December 2010, REIT Nine sold nearly 200 million shares to the public for gross proceeds of nearly $2 billion.  As of April 30, 2011, REIT Ten had sold approximately 28,342,685 shares for gross proceeds of over $307 million.

40.     REIT Nine and REIT Ten were the latest in a group of REITs formed by Knight beginning at least as early as 2000, and including Apple REIT Six, Inc. ("REIT Six") (which sold shares from April 23, 2004 to March 2006), Apple REIT Seven, Inc. ("REIT Seven") (which sold shares from March 15, 2006 to July 2007), and Apple REIT Eight, Inc. ("REIT Eight") (which sold shares from July 19, 2007 to April 2008), all of which invested in the same real estate subsector as REITs Nine and Ten, nationally branded extended stay hotels, and all of which offered shares for $11 per share, just like REITs Nine and Ten.

8

41.     There is no public market for the Apple REITs' shares.  Moreover, securities analysts do not typically report on the Apple REITs.  The lack of an open and efficient market for these heightens the importance of complete and accurate disclosures to investors.

42.     In fact, Apple REITs Six through Ten all invested primarily in properties of the same two hotel chains (Marriott International, Inc. or Hilton Worldwide).  They are managed by the same individual and are closely interrelated.

43.     Thus, the performance and history of prior Apple REITs was highly relevant and material to investors considering an investment in REITs Nine and Ten.  Indeed, the registration statement and prospectus for REITs Nine and Ten included several descriptions of the "prior programs" intended "to provide prospective investors with information concerning the past performance of entities formed by Glade M. Knight."

44.     Just like REITs Nine and Ten, REITs Six through Eight sold shares to the investing public for $11 per share, with DLA serving as the underwriter and sole distributor. However, by at least 2008, when REIT Nine began selling shares, and continuing through January 2010, when REIT Ten began selling shares, the value of the shares of the prior REITs had significantly declined from their $11 selling price because their operations had fallen dramatically and, further, was damaged by the REIT's practices of returning original investment capital and Dividend Reinvestment Plans ("DRIP") proceeds.  In addition, the economic downturn for commercial real estate (and the hotel and hospitality industry in particular) and net income decline compounded the loss of value of the prior REIT shares.

45.     FINRA rule 2340 requires REITs to bring valuations of shares current within 18 months of closing a public offering.  Virtually all other participants in the non-traded REIT industry performed revaluations of their own shares during the 2008 to 2010 period.

9

46.    Nevertheless, REITs Six through Nine never changed the $11 per share value in reports and statements provided to shareholders, which between 2008 and 2010 grew more and more inaccurate.  REITs Six through Nine all issued shares at $11 per share and never changed that valuation since REIT Six commenced its offering in April 2004.  The REITs justified their valuations on the basis of their continued ability to sell shares at $11 to existing shareholders under.  Accordingly, DLA has always recorded the Apple REITs at $11 per share on customer account statements.

47.    Because 10% of the proceeds from the sale of REIT shares is paid to DLA in the form of commissions and marketing allowances, the inherent value of the REIT shares does not even start at $11.

48.    Due to overpayment for properties, plus the exorbitant commissions, acquisition fees, and offering expenses paid off the top, REITs Six through Ten have never been profitable enough to fund their distributions to investors, which were 8% at the outset and reduced to 7% or 7.2% in May 2010.

49.    On top of paying exorbitant commissions, returning capital, and borrowing to fund distributions, general market conditions also seriously impaired the value of REITs Six through Nine.  The economic downturn for commercial real estate (and the hotel and hospitality industry in particular), as well as net income declines, has compounded the loss of value of the shares of REITs Six through Nine.   The general economy and the sector in which Apple REITs invest, extended stay hotels, suffered a significant, material downturn in 2008 and 2009 due to the overall economic crisis.

50.    Nevertheless, the Apple REITs continued to value their illiquid shares at the same $11 per share price at which they were issued.  By failing to timely and properly account for the

negative impact of the foregoing on the stock values of REITs Six through Nine, in violation of FINRA rule 2340 and the Securities Act, Defendants failed to disclose material information to members of the Class that an ordinary investor would have wanted to know before investing in REITs Nine or Ten.

51.     In 10-K filings with the SEC, REITs Six and Seven disclosed substantial declines in all material financial metrics from 2008 to 2009 in cash flow revenue and income.

    a.     Cash flows from operations declined from $88,747,000 in 2008 to $66,029,000 in 2009.

    b.     Total revenues declined from $258,913,000 in 2008 to $216,323,000 in 2009.

    c.     Net income declined from $58,502,000 in 2008 to $33,379,000 in 2009.

    d.     Funds Operations in 2009 were down 27% from 2008.

    e.     Revenue per room in 2009 declined 15.7% from 2008.

52.     Despite the foregoing, the Apple REITs did not adjust their valuations

53.     REIT Eight recently announced that it expects to default on five loans totaling $36.7 million and record on impairment loss of $7-11 million.

54.     A third party recently submitted tender offers to purchase shares of REIT Seven and REIT Eight on June 1, 2011 for $3 per share and estimated that the liquidation value of REIT Seven was approximately $4.15 per share and REIT Eight was approximately $4.10 per share. Nevertheless, REIT Eight's ostensible $11 per share valuation remains unchanged.

55.     When REIT Nine began selling shares in April 2008, and particularly when it was continuing to sell shares in 2009, the Defendants should have informed prospective investors

that the then current value of shares in REITs Six through Eight were significantly less than the $11 per share at which they were sold.

56.     Similarly when REIT Ten began selling shares in January 2010, the Defendants should have informed prospective investors that then current values in REITs Six through Nine were significantly less than the $11 per share at which they were sold.

57.     The unsupported $11 valuations concerned the core financial condition of those REITs. That information was highly material to investors who were being solicited to purchase shares in a later REIT with an identical investment strategy, run by the same management, at the same $11 per share price.

58.     The Apple REITs' offering documents were materially misleading because they did not include a discussion of the substantial declines in share values that resulted from funding distributions through returning capital and borrowing, which were "major adverse business developments or conditions." Moreover, by including certain financial disclosures concerning the prior programs but ignoring the critical impaired value of shares, the offering documents omitted material information "necessary to make the required statements, in light of the circumstances under which they are made, not misleading."

59.     In addition to soliciting purchases through the REIT Nine and REIT Ten offering documents, DLA also solicited the purchase of shares through its website and other written materials throughout the Class Period. Those solicitations were false and misleading in the same manner as the offering documents.

## VI.   COUNT I

### For Violations of Section 11 of the Securities Act Again REIT Ten, DLA, and the REIT Ten Officers and Directors on Behalf of Purchasers of REIT Ten Shares

60.    Plaintiff incorporates by reference each and every allegation contained above as if set forth fully herein.

61.    This Count is asserted under section 11 of the Securities Act, 15 U.S.C. §§ 77k, against REIT Ten, DLA, and the REIT Ten Officers and Directors, on behalf of the members of the Class who acquired REIT Ten securities pursuant to the offering documents.  Each member of the Class who acquired shares of REIT Ten did so pursuant to or traceable to the offering documents.

62.    The REIT Ten offering documents were materially false and misleading by containing untrue statements of material fact and omitted to state material facts required to be stated therein or necessary to make the statements made therein not misleading, as set forth above.

63.    Pursuant to section 11 of the Securities Act, the Class is entitled to recover its damages jointly and severally from REIT Ten as the registrant and from the REIT Ten Officers and Directors, as persons who signed the offering documents, and from DLA who served as Underwriter.

64.    Defendants owed the Class an absolute duty to ensure that the statements contained therein were true and that there were no omissions of material facts.

65.    Defendants issued and disseminated, caused to be issued and disseminated, and participated in the issuance and dissemination of, material misstatements to the investing public which were contained in the offering documents, which misrepresented or failed to disclose, inter alia, the facts set forth above.

13

66.     As a direct and proximate result of their conduct, the price of REIT Ten stock was artificially inflated and the Class consequently suffered substantial damages in connection with their acquisition of shares.

67.     At the time they obtained their shares of REIT Ten, Plaintiff and members of the Class did so without knowledge of the facts concerning the misstatements alleged herein.

68.     Plaintiff commenced this action within three years from the date of the registration statement for REIT Ten.  Under Item 512(a)(2) of Regulation S-K, 17 C.F.R. § 229.512(a)(2), this action is commenced within three years of the bona fide public offering of the REIT Ten shares and is also commenced within one year of the time any member of the Class could have learned of the wrongs alleged herein.

69.     By reason of the above, Defendants have violated section 11 of the Securities Act and are liable to Plaintiff and the members of the Class, each of whom has been damaged by reason of the violation.

## VII.    COUNT II

### For Violations of Section 12 of the Securities Act Against
### REIT Nine, REIT Ten, and DLA

70.     Plaintiff incorporates by reference each and every allegation contained above as if set forth fully herein.

71.     This Count is asserted under section 12(a)(2) of the Securities Act, 15 U.S.C. §§ 77l(a)(2) against REIT Nine, REIT Ten, and DLA on behalf of the members of the Class who acquired REIT Nine or REIT Ten securities.

72.     REIT Nine, REIT Ten, and DLA offered, sold, solicited or were a substantial factor in the sale of REIT Nine and REIT Ten stock offered pursuant to the offering documents.

14

73.     The offering documents for REITs Nine and Ten contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and concealed and failed to disclose material facts.

74.     REIT Nine, REIT Ten, and DLA owed to the members of the Class the duty to make a reasonable and diligent investigation of the statements contained in the prospectuses at the time they became effective to ensure that said statements were true and that there was no omission of material fact required to be disclosed in order for the statements contained therein not to be misleading.

75.     Plaintiff and other members of the Class purchased or otherwise acquired REIT Nine and REIT Ten securities pursuant to and/or traceable to the defective prospectuses.

76.     Plaintiff did not know, and in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the prospectus.

77.     Plaintiff commenced this action within three years of the sale of the REIT Nine and REIT Ten shares and also commenced this action within one year of the time any member of the Class could have learned of the wrongs alleged herein.

78.     By reason of the above, REIT Nine, REIT Ten, and DLA violated section 12(a)(2) of the Securities Act and are liable to Plaintiff and the Class, each of whom has been damaged by reason of the violation.

79.     Plaintiff and members of the Class still owning REIT Nine and REIT Ten stock hereby tender their stock upon return of the consideration paid, plus interest, and those members of the Class who sold their stock hereby tender the consideration they received upon the return of the consideration they paid, plus interest.

15

## VIII.   COUNT III

**For Control Person Liability Under Section 15 of the Securities Act Against
REIT Directors and Officers, Apple Nine Advisors, Apple Ten Advisors, and Lerner**

80.     Plaintiff incorporates by reference each and every allegation contained above as if set forth fully herein.

81.     Section 15 of the Securities Act, 15 U.S.C. § 77o, provides that "[e]very person who, by or through stock ownership, agency, or otherwise ... controls any person liable under sections 11 or 12 , shall also be liable jointly and severely with and to the same extent as such controlled person to any person to whom such controlled person is liable...."

82.     The REIT Officers and Directors, Apple Nine Advisors, Apple Ten Advisors, and Lerner, by reason of their directorial and/or management positions, are controlling persons of REIT Nine, REIT Ten, and DLA within the meaning of section 15 of the Securities Act and also are liable for the violations of sections 11 and 12 of the Securities Act alleged herein.

83.     Based on the allegations made herein, the REIT Officers and Directors, Apple Nine Advisors, Apple Ten Advisors, and Lerner had the power, influence and authority to cause or prevent the wrongful conduct described herein.

84.     By reason of the above, the REIT Officers and Directors, Apple Nine Advisors, Apple Ten Advisors, and Lerner have caused violations under sections 11 and 12 of the Securities Act and are liable to Plaintiff and the members of the Class, each of whom has been damaged by reason of the violation.

## IX.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.     Certifying the Class as set forth herein and designating Plaintiff as the representative thereof;

16

B.      Declaring the conduct of the Defendants to be in violation of law as set forth herein;

C.      Awarding Plaintiff and the members of the Class compensation for the damages which they have sustained as a result of the Defendants unlawful conduct;

D.      Ordering rescission of share purchases;

E.      Enjoining Defendants from further violation of law as alleged herein;

F.      Awarding Plaintiff's reasonable attorneys' fees, experts' fees, interest and cost of suit, and

G.      Awarding such other and further relief as this Court may deem just.

X.      **PLAINTIFF DEMANDS A JURY TRIAL**

Plaintiffs hereby demand trial by a jury as to all issues so triable.

Dated: June 28, 2011                    KIRBY McINERNEY LLP

                                        By: _____
                                        Ira M. Press
                                        825 Third Avenue, 16th FL.
                                        New York, NY 10022
                                        Telephone:  (212) 371-6600
                                        Facsimile:  (212) 751-2540
                                        ipress@kmllp.com

                                        Law Offices of Marc S. Henzel
                                        Marc S. Henzel
                                        431 Montgomery Ave., Suite B
                                        Merion Station, PA 19066
                                        Telephone:  (610) 660-8000
                                        Facsimile:  (610) 660-8080
                                        mhenzel@henzellaw.com

                                        *Counsel for Plaintiff*

17

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

Marvin Leff ("plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1.           Plaintiff has reviewed the attached complaint, and has authorized its filing on plaintiff's behalf.  Plaintiff retains Kirby McInerney LLP and such co-counsel as it deems appropriate to associate with to pursue such action on a contingent fee basis.

2.           Plaintiff did not purchase the securities that are the subject of this litigation at the direction of plaintiff's counsel or in order to participate in this private action.

3.           Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.           Plaintiff's transactions in the securities that are the subject of this litigation during the class period set forth in the complaint are set forth below on the attached Schedule A.

5.           During the three years prior to the date of this certification, plaintiff has not served or sought to serve as a representative party for a class in any action filed under the federal securities laws, except as listed below:

_____

_____

6.           Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the plaintiff's pro rata share of any class recovery, except as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed

this 23 day of June , 2011.
(date)        (month)

By: _____
(Signature)

## SCHEDULE A

Transactions of Plaintiff in the securities that are the subject of this litigation:

| Date | Purchased/Sold | Number of Shares | Price Per Share |
|------|----------------|------------------|-----------------|
| *Apple REIT Nine, Inc.:* | | | |
| 10/28/10 | Purchased | 3,890.954 | $11.00 |
| *Apple REIT Ten, Inc.:* | | | |
| 2/7/11 | Purchased | 4,545.455 | $11.00 |